IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| INTERCITY AMBULANCE EMERGENCY MEDICAL TECHNICIANS, LLC, et al., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § | CIVIL NO. 1:14-CV-58 |
| CITY OF BROWNSVILLE, TEXAS, | § § § | |
| Defendant. | § § | |

## ORDER

BE IT REMEMBERED that on March 25, 2015, the Court **GRANTED IN PART** and **DENIED AS MOOT IN PART** Defendant's Rule 12 Motion to Dismiss and Alternatively Rule 8(a) and 8(d) Motion to Dismiss, Dkt. No. 9; **DENIED** Defendant's Second Rule 12 Motion to Dismiss, Dkt. No. 14; **GRANTED** Defendant's Rule 12 Motion to Dismiss as to Plaintiffs' First Amended Complaint, Dkt. No. 24; and **DENIED AS MOOT** Plaintiffs' Unopposed Motion to Supplement the Summary Judgment Record, Request to Take Judicial Notice[,] Fed. R. Evid. 201, Dkt. No. 16.

I.  Background

On April 9, 2014, Plaintiffs Justin Oakerson ("Oakerson") and Intercity Ambulance Emergency Medical Technicians ("IAEMT") (collectively, "Plaintiffs") filed this action against Defendant City of Brownsville claiming a First Amendment retaliation cause of action, interference with business relationship as retaliation for First Amendment right to be a witness, violation of equal protection, intimidation of an expert witness, and civil conspiracy. Dkt. No. 1; Dkt. No. 21. Plaintiffs' claims arise out of litigation in state court where Oakerson was to provide expert testimony regarding the training firefighters should undergo to be paramedics. Dkt. No. 1 at 2; Dkt. No. 21 at 2–3. Plaintiffs allege that Defendant began

retaliating against them based on this opinion by, for example, issuing Plaintiffs a citation for operating an ambulance without a license and taking away Plaintiffs' business. Dkt. No. 1; Dkt. No. 21.

On May 13, 2014, Defendant filed a motion to dismiss under Rules 12 and 8 of the Federal Rules of Civil Procedure, moving to dismiss Plaintiffs' First Amendment, civil conspiracy, and Fifteenth Amendment claims, as well as moving to dismiss Plaintiffs' entire complaint under Rules 8(a) and (d) for being too vague. Dkt. No. 9. Plaintiffs responded on June 2, 2014, Dkt. No. 10; and Defendant replied on June 23, 2014, Dkt. No. 13. On June 23, 2014, Defendant filed a second motion to dismiss under Rule 12, this time moving to dismiss Plaintiffs' equal protection claim. Dkt. No. 14. On July 8, 2014, Plaintiffs had also filed an unopposed motion to supplement the summary judgment record. Dkt. No. 16. Plaintiffs responded to Defendant's second motion to dismiss on July 14, 2014, Dkt. No. 18; Defendant replied on August 1, 2014, Dkt. No. 19. On September 2, 2014, Plaintiffs filed their First Amended Complaint. Dkt. No. 21. On September 19, 2014, Defendant filed a motion to dismiss as to Plaintiffs' amended complaint. Dkt. No. 24. Plaintiffs filed their response on October 14, 2014, Dkt. No. 28; Defendant did not file a reply.

The Court has compared Plaintiffs' original complaint, Dkt. No. 1, with their amended complaint, Dkt. No. 21, and finds that, aside from removing or amending certain sections, which are addressed below, *infra* Part II, the complaints are substantially identical. As such, except where specifically noted, the Court will rule on Defendant's motions to dismiss based on the amended complaint.

## II.  Motions to Dismiss Based on Original Complaint

Defendant's first motion to dismiss implored the Court to dismiss Plaintiffs' civil conspiracy claim. Dkt. No. 9 at 6–9. Defendant argued that Plaintiffs had failed to specify a statue under which Plaintiffs were suing, but that no relief could be granted under 42 U.S.C. § 1985. Dkt. No. 9 at 6–9. In Plaintiffs' amended complaint, Plaintiffs appear to have clarified their intention as to their conspiracy

claim—they now make a civil conspiracy/tortious interference with contract claim under Texas law. Dkt. No. 21 at 6–12. As Plaintiffs have amended their complaint, the Court **DENIES AS MOOT** Defendant's first request that the Court dismiss Plaintiffs' civil conspiracy claim from Defendant's first motion to dismiss.

Defendant's first motion to dismiss also argued that Plaintiffs failed to state a claim under the Fifteenth Amendment. Dkt. No. 9 at 9. The Court also **DENIES AS MOOT** Defendant's motion to dismiss this claim, as Plaintiffs have withdrawn it. Dkt. No. 10 at 9.

Finally, Defendant's first motion to dismiss requested that the Court dismiss Plaintiffs' original complaint under Federal Rule of Civil Procedure 8 for failing to contain a "short and plain statement" of the claims, Fed. R. Civ. P. 8(a)(2), and for failing to make each allegation "simple concise and direct," Fed. R. Civ. P. 8(d)(1). Dkt. No. 9 at 9–11. Specifically, Defendant points to several headnotes used by Plaintiffs, including "Intimidation of an Expert Witness," "Preferential Treatment of Guardian EMS," and "Interference with business relationship for First Amendment right to be a witness." Dkt. No. 9 at 9. Defendant argues that it is unclear whether these are "part and parcel" to the claims it moves to dismiss or whether Plaintiffs are "asserting some other separate, vague causes of action." Dkt. No. 9 at 9–10. In Plaintiffs' amended complaint, Plaintiffs have removed several of these "causes of action," including "causal connection," "retaliatory motive was but for cause," and "Intimidation of an Expert Witness." Dkt. No. 21. As Plaintiffs have amended their complaint and edited several of the headnotes challenged by Defendant, the Court **DENIES AS MOOT** Defendant's motion to dismiss the complaint under Rule 8.

III. **Remaining Motions to Dismiss**
   a. **Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) states that a plaintiff's claim may be dismissed it if fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For a complaint to be sufficient, it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

A court is to "construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in favor of the plaintiff." *Rodriguez v. Lewis*, 427 F. App'x 352, 353 (5th Cir. 2011). In evaluating a plaintiff's complaint in light of a defendant's motion to dismiss under Rule 12(b)(6), a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Then the court may determine whether the plaintiff's well-pleaded facts allow the court to infer the plausibility of misconduct. *See id.* "Factual allegations must be enough to raise a right to relief above a speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### b. First Amendment Claim

Defendant moves to dismiss Plaintiffs' First Amendment claim on the grounds that neither Plaintiff alleges any protected speech. Dkt. No. 9 at 2–5. Defendant argues that the mediation summary that contained Oakerson's expected testimony does not constitute speech that qualifies for First Amendment protection because Oakerson never "actually offer[ed] a public opinion himself, or testif[ied] or ma[de] speech himself on this particular issue." Dkt. No. 9 at 3.

In response, Plaintiffs assert that Oakerson's speech falls under the same category of speech as testimony or depositions that led to retaliation, citing, for example, *Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) (testimony). Dkt. No. 10 at 4–5. Plaintiffs urge the Court that Oakerson's testimony summarized in the

expert designation "is like a deposition and is protected speech which ought to be free from the chilling effect of actual and prospective prosecution." Dkt. No. 10 at 5.

In reply, Defendant argues that Plaintiffs appear to assert both a prior restraint claim and a retaliation claim and that both should fail. First, with regard to prior restraint, there was no official administrative or court order that prohibited Oakerson from making his speech. Dkt. No. 13 at 2. Second, the retaliation claim should fail for the reasons Defendant asserts in its original motion. Dkt. No. 13 at 3–4.

The First Amendment protects speech "not only [from] direct limitations. . . but also [from] adverse government action against . . . individual[s] because of [their speech]." *Kinney*, 367 F.3d at 357 (alterations in original). To assert a First Amendment claim, a plaintiff must allege that "(1) defendants were acting under color of state law; (2) the plaintiff's activities were protected under the [F]irst [A]mendment; and (3) the plaintiff's exercise of the protected right was a substantial or motivating factor for defendant's actions. *Rolf v. City of San Antonio*, 77 F.3d 823, 827 (5th Cir. 1996).[1] These elements are unqualified, and other than exceptions not relevant here, all speech is covered. This includes speech that is made by a first actor to a second actor, who then communicates that speech to a governmental third actor. *Cf. Duran v. City of Corpus Christi*, 240 F. App'x 639, 643 (5th Cir. 2007); *Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir. 2010).

The doctrine of third-party standing in First Amendment claims supports this idea. For third-party standing, three criteria are required: "(1) The litigant must have suffered an 'injury in fact,' giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; (2) the litigant must have a close relationship to the third party; and (3) there must exist some hindrance to the third party's ability to protect his or her own interests." *Duran* 240 F. App'x at 643.

---

[1] Or in the employment context "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney*, 367 F.3d at 356. The slightly different standard applied to governmental employee and independent contractors is irrelevant to the Court's instant discussion and was specifically not raised by Defendant. Dkt. No. 9 at 2 n.1.

"Implicit in [this] formulation is the requirement that the third party . . . has a constitutional claim." *Huth*, 598 F.3d at 75. In *Huth*, for example, an employee brought a retaliation claim after she communicated to her employers the concerns that her subordinate had about coworkers' conduct. *Id.* at 71–73. On appeal, the court held that the plaintiff could not bring a claim based on her subordinate's First Amendment rights where her subordinate "did not suffer any injury." *Id.* at 75. Relevant to the case at hand is that the court implicitly held that the First Amendment could have protected the subordinate's speech had she suffered injury, even though she did not communicate directly with the governmental actor. Put another way, implicit in a third-party-standing claim is the idea that a speaker might have a First Amendment claim against a governmental actor even if a second person is the conduit for that speech.

Here, the complaint states that Oakerson was designated as an expert witness in litigation in state court and a summary of his testimony was filed with the District Clerk of Cameron County. Dkt. No. 21 at 3. The summary stated as follows:

> "NOW COMES, BROWNSVILLE FIREFIGHTER ASSOCIATION, Plaintiff in the above entitled and numbered cause, and designates the following expert who may be called to testify at trial:
> Justin Oakerson
> . . . .
> Justin Oakerson is the owner of a company which furnishes education to firefighters. Mr. Oakerson has an over all [sic] 10 years of experience in conducting education to firefighters with 2 years experience instructing 1000 hour courses to prepare firefighters to take the National Registry Test.
> Mr. Oakerson is expected to testify on the subject matter of the time necessary to prepare a firefighter to take the National Registry Test.
> Mr. Oakerson is of the opinion that a 48 hour course is merely a refresher course and that a 1000 hour course is necessary to prepare the firefighters to take the National Registry Test."

Dkt. No. 1, Ex. A.² In providing this summary to the state trial court, the lawyers in the previous action had an obligation of candor toward the tribunal. Tex. Disciplinary R. Prof'l Conduct 3.03; *cf. Lane v. Franks*, 134 S. Ct. 2369, 2378–79 (2014) ("Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth."). Defendants make no claim that the information provided by Oakerson to the attorneys was fabricated. Construing the complaint in the light most favorable to Plaintiffs, the Court draws the reasonable inference that statements made by Oakerson to the lawyers in the previous suit was the basis for the lawyers' good-faith representation to the state trial court. Nevertheless, the complaint does not allege and the expert summary does not support a finding that IAEMT engaged in any speech. Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' First Amendment retaliation claim as to Oakerson, **GRANTS** Defendant's motion to dismiss Plaintiffs' First Amendment retaliation claim as to IAEMT, and **DISMISSES** that claim as to IAEMT.

The Supreme Court has used the term prior restraint "to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993); *see also Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 235–36 (5th Cir. 2012). Examples of prior restraints are temporary restraining orders and permanent injunctions—that is, "court orders that actually forbid speech activities." *Alexander*, 509 U.S. at 550. Plaintiffs make no allegation that they were anticipatorily prevented by law from expressing their views on firefighter paramedic training. To the extent that Plaintiffs intended to allege a prior restraint claim, as Defendant suggests in its reply, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' First Amendment prior restraint claim as to both Plaintiffs.

---

² When Plaintiffs filed their amended complaint, Dkt. No. 21, the exhibits that were attached to their original complaint were not refiled. Plaintiffs still refer to them in their amended complaint, and the Court incorporates them here by reference.

### c. Equal Protection Claim

Defendant moves to dismiss Plaintiffs' equal protection claim on the grounds that Plaintiffs do not allege any identifiable class to which they belong and that they fail to allege facts to support a class-of-one claim. Dkt. No. 14 at 3. Defendant cites *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 (2008), for the proposition that a class-of-one claim fails when one person is treated differently as a result of discretionary decisionmaking "based on a vast array of subjective, individualized assessments." Dkt. No. 14 at 3. In response, Plaintiffs argue that sufficient facts were pleaded to make an equal protection claim. Plaintiffs provide the names of ten companies that they believe are operating without a license and assert that they are the only one to have been cited for such an offense. Dkt. No. 18 at 5.

"[E]qual protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" *Engquist*, 553 U.S. at 601. In such cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Id.* Nonetheless, the Supreme Court has also recognized that an equal protection claim can arise when a plaintiff alleges that he "has been irrationally singled out." *Id.*; *see also Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012) (providing the elements of a class-of-one claim). As the Court explained, the Fourteenth Amendment "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Id.* at 602 (quotations omitted). When an individual is treated differently from others similarly situated, the Equal Protection Clause requires that the governmental actor provide a rational basis for the different treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In *Engquist*, the Supreme Court drew a distinction between cases in which "the existence of a clear standard against which departures . . . could be readily assessed" and cases in which state action requires "discretionary decisionmaking based on a vast array of subjective, individualized assessments." 553 U.S. at 602, 603. In the former, the differential treatment raised equal protection concerns,

while in the latter, allowing such a challenge "would undermine the very discretion that such state officials are entrusted to exercise." *Id.* at 603. In the discretion context, the Court provided an example where an officer gives one person a speeding ticket. *Id.* at 603–04. The Court suggested that "it [was] in the nature of the particular government activity that not all speeders can be stopped and ticketed, [and] complaining that one has been singled out for no reason does not invoke the fear of improper government classification." *Id.* at 604.

Here, Plaintiffs allege that Defendant "has not ever granted anyone a license to operate an ambulance in the City." Dkt. No. 21 at 4. Moreover, Plaintiffs seem to claim that Defendant categorically does not enforce the licensing law: "The City has consistently allowed several entities to operate an ambulance service without any single one of them having a license." Dkt. No. 21 at 4; *see also* Dkt. No. 21 at 5. Plaintiffs provide the names of ten other entities that have been "operating in the City for at least the last three years without a license." Dkt. No. 21 at 4. Plaintiffs were indeed issued a citation for operating without a license, Dkt. No. 21 at 4, which is facially similar to the example of governmental discretion in *Engquist*. Nonetheless, the Court finds that Plaintiffs have sufficiently pleaded an equal protection claim on the face of their complaint. Here, there is no indication that the government cannot stop and ticket all ambulance companies driving without a license. *See Engquist*, 553 U.S. at 604. To the contrary, and as in *Olech*, there appears to be a "clear standard"—allowing ambulances to operate without a license, for better or worse—"against which departures," that is, citing one operator, can be "readily assessed." 553 U.S. at 603. Accordingly, Defendant is required to provide a rational basis for the different treatment. *See id.* Accordingly, the Court **DENIES** Defendant's motion to dismiss Plaintiffs' equal protection claim.

### d. Civil Conspiracy/Tortious Interference with Contract and Tortious Interference with Existing Business Relationship Claims

Defendant moves to dismiss Plaintiffs' state law claims on the grounds that Defendant, a municipality, is immune from suit and has not waived its immunity.

Dkt. No. 24 at 2–4. Plaintiffs respond that the waiver-by-conduct exception applies, which defeats Defendant's presumptive immunity. Dkt. No. 28 at 3.

In Texas, when a governmental entity is sued, sovereign immunity deprives a trial court of subject-matter jurisdiction unless the state consents. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The Texas Tort Claims Act ("TTCA") provides a limited waiver of sovereign immunity. *Id.* (citing Tex. Civ. Prac. & Rem. Code §§ 101.001–.109). The TTCA does not extend the limited waiver to suits for intentional torts, including those claimed by Plaintiffs. Tex. Civ. Prac. & Rem. Code § 101.057(2) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities."); *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 248 (Tex. App.—El Paso 2012, no pet.) (tortious interference with contract is an intentional tory barred by immunity); *TCI W. End, Inc. v. City of Dallas*, 274 S.W.3d 913, 921 (Tex. App.—Dallas 2008, no pet.) (civil conspiracy is an intentional tort barred by immunity under the TTCA); *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 357 (Tex. App.—San Antonio 2000, pet. denied) (interference with business relationship is an intentional tort barred by immunity under the TTCA).

Plaintiffs argue that an exception to Defendant's immunity applies, namely that Defendant has waived immunity by conduct. Dkt. No. 28 at 3. The Texas Supreme Court has recognized this possibility of a limited exception to immunity where the government waives immunity by conduct in the context of a contractual relationship. *See Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997); *Catalina Dev., Inc. v. City of El Paso*, 121 S.W.3d 704, 705 (Tex. 2003). "[T]here might be circumstances 'where the State may waive immunity by conduct other than simply executing a contract.'" *Catalina*, 121 S.W.3d at 705 (quoting *Fed. Sign*, 951 S.W.2d at 408 n.1). Nonetheless, the Texas Supreme Court has declined to recognize a waiver by conduct based on the facts in any case presented before it. *See, e.g., Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex.2011); *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007);

*Catalina*, 121 S.W.3d at 706; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002).[3] Whether or not the exception exists, this Court has only found the exception discussed in cases involving alleged breach of contract, where the governmental entity is one of the parties to the contract. This Court, as well as the parties in the instant case, has identified no case in which a Texas court has extended this potential exception beyond breach-of-contract claims.

Plaintiffs make no breach-of-contract claim against Defendant itself. Nor do the facts alleged in Plaintiffs' amended complaint support the existence of a contract between Plaintiffs and Defendant. Plaintiffs merely state that Defendant "allowed Plaintiffs to operate within the City unmolested for three years and even called upon Plaintiffs to pick up and deliver" certain patients. Dkt. No. 21 at 3. As such, the Court finds that the waiver-by-conduct exception Plaintiffs rely on is not applicable to Plaintiffs' case.

As the exception urged by Plaintiffs does not apply and the TTCA specifically does not extend a waiver of sovereign immunity to suits for intentional torts, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' civil conspiracy/tortious interference with contract and tortious interference with existing business relationship claims and **DISMISSES** these claims.

### e. Access to the Courts

Finally, Defendant moves to dismiss Plaintiffs' claim that Defendant has impeded their access to the courts pursuant to 42 U.S.C. § 1983. Dkt. No. 24 at 4–5. Defendant first argues that Plaintiffs have not pleaded a constitutional amendment that was violated by Defendant's alleged behavior. Dkt. No. 24 at 4. Defendant also argues that Plaintiffs fail to establish an official policy, practice, or custom, or to identify a policymaker. Dkt. No. 24 at 5. Plaintiffs respond that Defendant

---

[3] While the Texas Supreme Court has yet to recognize such a waiver by conduct, some Texas courts of appeal have found that a governmental entity has waived immunity by its conduct. *E.g.*, *Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 907 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Other Texas courts of appeal have specifically declined to recognize the waiver-by-conduct exception "in the absence of further guidance from the [S]upreme [C]ourt" of Texas. *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 521 (Tex. App.—Austin 2014, no pet.).

violated Plaintiffs' First Amendment rights by intimidating Plaintiffs and preventing them access to challenge the citation for operating without a license. Dkt. No. 28 at 4–5.

Section 1983 prohibits "persons" acting under the color of law from depriving another of any "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality is considered a person under § 1983 and can be liable for a deprivation of rights inflicted pursuant to official policy. *Palmer v. City of San Antonio, Tex.*, 810 F.2d 514, 516 (5th Cir. 1987), *abrogated on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff must identify "(1) a policy (2) of the city's policymaker (3) that caused (4) the plaintiff to be subjected to a deprivation of constitutional right." *Palmer*, 810 F.2d at 516 (citing *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161, 169 (5th Cir. 1985)); *see also Santiago v. City of Houston*, 232 F. App'x 381, 384 (5th Cir. 2007). Additionally, a single incident is generally insufficient. *Backe v. City of Galveston, Tex.*, 2 F. Supp. 3d 988, 1001 (S.D. Tex. Mar. 5, 2014) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768. n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy.")). Instead, a "discernible pattern of similar behavior or activity is required." *Id.*

Even taken in the light most favorable to Plaintiffs, Plaintiffs' amended complaint does not state sufficient facts to make a claim under § 1983. Plaintiffs' amended complaint states that when Plaintiffs went to court to plead not guilty to the first citation, "City interfered with Plaintiffs [sic] right to appear and to defend and to access the courts by citing Plaintiffs with additional false accusations": additional citations. Dkt. No. 21 at 13. This single instance of issuing new citations is insufficient to allege that the City had a custom or policy of citing individuals to prevent them from and intimidate them into not adjudicating their claims in court.

Additionally, Plaintiffs amended complaint alleges no official policymaker. Throughout Plaintiffs' amended complaint, Plaintiffs refer to a variety of governmental actors, including attorney Tim Lopes; Health Director Art Rodriguez;

attorney John Chosy; Fire Chief Lenny Perez; Fire Marshal Danny Villareal; Fire Inspector Raymond Harris. *See generally* Dkt. No. 21. But Plaintiffs do not point to a single figure who "decide[d] the goals for a particular city function and devise[d] the means of achieving those goals." *Bennett*, 728 F.2d at 769. In response to Defendant's motion to dismiss, Plaintiffs seek leave to amend "to aver that Harris [issued the additional citations to Plaintiffs in court] at the specific instance [sic] and request and direction of Counsel, John Chosy, attorney for the Defendant." Dkt. No. 28 at 4. Nonetheless, Plaintiffs do not seek leave to amend to allege that Chosy, an attorney for the City of Brownsville, was himself a policymaker for § 1983 purposes. Based on these facts, Plaintiffs amended complaint does not state a claim under § 1983. Plaintiffs' proposed additional amended would also not support a § 1983 claim, and leave to amend is **DENIED**. Accordingly, Defendant's motion to dismiss Plaintiffs' § 1983 claim is **GRANTED**, Plaintiffs' impeding access to the courts claim is **DISMISSED**.

### IV. Plaintiffs' Unopposed Motion to Supplement Summary Judgment Record

On July 8, 2014, Plaintiffs filed an unopposed motion to supplement the summary judgment record with the petition that was filed in state court, where the controversy surrounding Oakerson's testimony originated, and a request for the Court to take judicial notice of the expert designation and summary of testimony in that case. Dkt. No. 16 at 2–3. As there was no motion for summary judgment pending when Plaintiffs filed this motion, the Court **DENIES** Plaintiffs' motion, Dkt. No. 16, **AS MOOT**.

### V. Conclusion

Based on the foregoing, the Court

1) **DENIES AS MOOT** Defendant's request in its first motion to dismiss, Dkt. No. 9, that the Court dismiss Plaintiffs' civil conspiracy claim;
2) **DENIES AS MOOT** Defendant's motion to dismiss Plaintiffs' Fifteenth Amendment claim;

3) **DENIES AS MOOT** Defendant's motion to dismiss under Rule 8;

4) **DENIES** Defendant's motion to dismiss Plaintiffs' First Amendment retaliation claim as to Oakerson;

5) **GRANTS** Defendant's motion to dismiss Plaintiffs' First Amendment retaliation claim as to IAEMT and **DISMISSES** that claim as to IAEMT.

6) **GRANTS** Defendant's motion to dismiss Plaintiffs' First Amendment prior restraint claim and **DISMISSES** this claim;

7) **DENIES** Defendant's motion to dismiss Plaintiffs' equal protection claim;

8) **GRANTS** Defendant's motion to dismiss Plaintiffs' civil conspiracy/tortious interference with contract and tortious interference with existing business relationship claims and **DISMISSES** these claims;

9) **DENIES** Plaintiffs' request for leave to amend;

10) **GRANTS** Defendant's motion to dismiss Plaintiffs' § 1983 claim based on access to the courts and **DISMISSES** this claim; and

11) **DENIES AS MOOT** Plaintiffs' motion to supplement the summary judgment record.

SIGNED this 25th day of March, 2015.

                                              _____
                                              Hilda Tagle
                                              Senior United States District Judge